Affirmed in Part; Reversed and Remanded in Part; Majority and Concurring
and Dissenting Opinions filed October 21, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00420-CV

___________________

 

Charles W. Burnett, Appellant

 

V.

 

David Sharp, Appellee



 



 

On
Appeal from the 412th District Court

Brazoria County,
Texas



Trial Court Cause No. 51711

 



 

 

CONCURRING AND DISSENTING OPINION

I agree that the district court’s
order operates as a dismissal of inmate Charles W. Burnett’s in forma
pauperis action against his former attorney, David Sharp, under Chapter 14
of the Texas Civil Practice and Remedies Code.  See Minix v. Gonzales,
162 S.W.3d 635, 637 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing Tex.
Civ. Prac. & Rem. Code Ann. §§ 14.003(a)(2), (b)(2) (Vernon 2009)).  I
also agree that the trial court properly dismissed Burnett’s “negligence” claim
against Sharp because that claim has no arguable basis in law under section
14.003(b)(2).

My disagreements focus on (1) the characterization of
Burnett’s remaining claims against Sharp; (2) the explanation for an expansive
characterization of Burnett’s remaining claims based upon the absence of
special exceptions in a suit that was dismissed before service; and (3) the breach
of fiduciary duty analysis.  

This court should affirm the trial court’s dismissal
of the “legal malpractice” claims Burnett labeled in his original petition as “breach
of fiduciary duty,” “deception,” and “negligence.”  It should reverse only the
trial court’s determination that dismissal is with prejudice, and affirm the
trial court’s judgment as modified to specify that dismissal is without
prejudice.  This court’s disposition is erroneous insofar as it reverses the
trial court’s judgment as to breach of fiduciary duty and remands that claim
for further consideration, along with claims for conversion and money had and
received that Burnett did not assert.

Therefore, I join only sections I., II.A., and
II.C.3. of this court’s opinion.   I concur in this court’s judgment in part
and respectfully dissent in part.

Analysis

We usually apply an abuse of discretion standard to
review dismissal of claims brought in forma pauperis by an inmate.  Hickman
v. Adams, 35 S.W.3d 120, 123 (Tex. App.—Houston [14th Dist.] 2000, no
pet.).  But when a lawsuit is dismissed without a hearing pursuant to Chapter
14 because it “has no arguable basis in law,” our review is de novo.  Minix,
162 S.W.3d at 637; Retzlaff v. Tex. Dep’t of Crim. Justice, 94 S.W.3d
650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  A claim has no
arguable basis in law if it is based on (1) wholly incredible or irrational
factual allegations; or (2) an “‘indisputably meritless legal theory.’”  Minix,
162 S.W.3d at 637 (quoting Gill v. Boyd Distrib. Ctr., 64 S.W.3d 601,
603 (Tex. App.—Texarkana 2001, pet. denied)).

In “Plaintiff’s Original Petition,” Burnett complained
“of and about David Sharp, Defendant, alleging legal malpractice . . . .”  This
pleading included headings entitled “Parties and Service,” “Discovery Control
Plan,” “Jury Demand,” “Jurisdiction and Venue,” “Facts,” and “Prayer.”  The
factual and legal bases for Burnett’s specific causes of action are alleged in numbered
paragraphs in the “Facts” section of his pleading:

6.         In June of 2006, plaintiff retained defendant to
represent plaintiff in a criminal matter.  Defendant received $3000.00 from plaintiff
for [his] . . . services.

7.         Defendant made an appearance in court for plaintiff’s
first court appearance, and reset the cause.

8.         Defendant made four additional court appearances
for plaintiff, all of which defendant reset for the next month.

9.         Defendant was replaced with another attorney.  Defendant
did not render any more services for the fee paid to defendant.

10.       Plaintiff called defendant from the jail
facility.  Defendant’s secretary accepted one collect call from plaintiff. 
Afterwards, the secretary did not accept [any more] . . . collect calls from plaintiff.

11.       Plaintiff’s family called defendant on many
[occasions] . . . to request a refund, minus defendant’s services rendered. 
Defendant failed to refund any of plaintiff’s funds.

12.       Plaintiff’s family continued to call defendant requesting
a refund until plaintiff served defendant a written request for a return of [his]
. . . funds in September of 2008.  Defendant failed to respond nor did defendant
refund plaintiff’s funds.

13.       Defendant has breached [his] . . . fiduciary duty
owed to plaintiff, by deception and negligence.

In the “Prayer,” Burnett
asked that “Defendant be cited to appear and answer . . . .”  He also asked for
“compensatory damages in the amount of $10,000.00;” “punitive damages in the
amount of $5,000.00;” and “all relief, in law and in equity, to which Plaintiff
[may be] . . . entitled.”

The factual allegations quoted above are neither
irrational nor wholly incredible.  Burnett alleges the existence of a dispute
with his former attorney arising from Burnett’s post-termination request for a
partial refund of the fee he paid to the attorney during the representation,
and his attorney’s post-termination failure to do so.  Burnett’s factual
allegations provide no basis for concluding that his suit is frivolous.

Accordingly, the dispositive issue in this appeal is
whether the pleaded legal theories are “‘indisputably meritless.’”  Minix,
162 S.W.3d at 637 (quoting Gill, 64 S.W.3d at 603).  Answering this
question requires us first to identify Burnett’s pleaded legal theories.  To do
so, we must construe a pro se appellant’s brief and a pro se
petition that was dismissed before service of process was accomplished on the
defendant.  There is no appellee’s brief and no trial court pleading by the
defendant to assist us in identifying the causes of action at issue.  Nor are
these causes of action identified by name in the dismissal order.  The order states
that the trial court “reviewed the pleadings in the above referenced cause” and
concludes as follows:  “It appearing that the Plaintiff has failed to state a
cause of action as a matter of law, it is ORDERED that the cause is dismissed
with prejudice to the rights of the Plaintiff to refile the same.”

I.         Determining
Which Legal Theories Burnett Asserted Against Sharp

Identifying the legal theories Burnett pleaded is made
more difficult by his appellate brief’s nonspecific references to a “legal
malpractice claim.”  Burnett contends on appeal that he has asserted a
non-frivolous claim for “legal malpractice.”  He asserts that “[a]ll of the
elements for a legal malpractice claim [were] presented in appellant’s
petition.”  Burnett does not refer in his brief to causes of action for “breach
of fiduciary duty,” “deception,” or “negligence,” which are the labels he used
in his petition.

This court has identified “a potential nomenclature
problem . . . caused by the fact that a ‘legal malpractice claim’ might be
thought of by some as any claim brought by a client against that client’s
attorney.”  Deutsch v. Hoover, Bax & Slovacek, L.L.P., 97 S.W.3d
179, 184 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.); see also Beck
v. The Law Offices of Edwin J. (Ted) Terry, Jr., P.C., 284 S.W.3d 416, 427
n.10 (Tex. App.—Austin 2009, no pet.).  “[W]hen cases refer to ‘legal
malpractice’ or ‘a legal malpractice claim,’ often they are referring to a
negligence claim in which the issue is whether the attorney exercised that
degree of care, skill, and diligence as attorneys of ordinary skill and knowledge
commonly possess and exercise.”  Deutsch, 97 S.W.3d at 184 n.1.
(citing Goffney v. Rabson, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied)); see also Duerr v. Brown, 262 S.W.3d 63,
69-70 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Taking this potential nomenclature problem into
consideration, the proper approach on appeal is to address the legal viability
of Burnett’s “legal malpractice” claim under Chapter 14 by examining it in
light of the specific “breach of fiduciary duty,” “deception,” and “negligence”
labels he expressly invoked in his petition to describe his causes of action
against Sharp.

II.        Determining the
Disposition of Burnett’s Legal Theories

A.    Conversion
and Money Had and Received

Burnett sued Sharp for “legal malpractice” based on an
allegation that Sharp “has breached [his] . . . fiduciary duty owed to
plaintiff, by deception and negligence.”  This allegation does not assert claims
for conversion or money had and received.

Section II.B. of the plurality opinion explains a broad
interpretation of Burnett’s allegation on grounds that Sharp did not file
special exceptions to the original petition.  In so doing, the plurality
opinion relies on inapposite case law arising outside the Chapter 14 context.  See
London v. London, 192 S.W.3d 6, 13 (Tex. App.—Houston [14th Dist.] 2005,
pet. denied) (citing Boyles v. Kerr, 855 S.W.2d 593, 600-01 (Tex.
1993)).  This explanation does not withstand scrutiny because Sharp could not be
expected to file special exceptions to a petition that was dismissed under
Chapter 14 before it was served on him.  Moreover, Sharp would not have been
required to file special exceptions even if Burnett’s petition had been served
on him.  The absence of special exceptions has no bearing on whether Burnett
asserted legally viable claims under Chapter 14.  The erroneous incorporation
of special exception standards into the Chapter 14 analysis threatens to sow
confusion.

Chapter 14 operates according to its own distinct procedures. 
“Because a trial court is authorized to dismiss a claim before service
of process, i.e., before the defendant has filed an answer, we find the court
has continuing authority to dismiss a cause of action even where the defendant
files no answer.”  McCollum v. Mt. Ararat Baptist Church, Inc., 980
S.W.2d 535, 537 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (original
emphasis).  “In fact, the applicability of chapter fourteen is not contingent
on the defendant’s satisfaction of any procedural rule.”  Id. (original
emphasis).  “This is consistent with the purpose of chapter fourteen which is
‘to control the flood of frivolous lawsuits being filed in the courts of this
State by prison inmates, consuming valuable judicial resources with little
offsetting benefit.’”  Id. (quoting Hickson v. Moya, 926 S.W.2d
397, 399 (Tex. App.—Waco 1996, no pet)).

This reasoning has been applied to reject contentions
that special exceptions are required before dismissal under Chapter 14.  See
Hughes v. Massey, 65 S.W.3d 743, 745 (Tex. App.—Beaumont 2001, no pet.) (Special
exceptions are not required before dismissal of inmate’s in forma pauperis
action under Chapter 14; “the inmate has no right to notice of a motion to
dismiss or to an opportunity to amend.”); see also Bonds v. Rodriguez,
No. 04-02-00156-CV, 2003 WL 141043, at *3 (Tex. App.—San Antonio Jan. 22, 2003,
pet. denied) (mem. op.) (Special exceptions are not required before dismissal
under Chapter 14; “[h]ad the Legislature intended to impose such a requirement
on defendants in a suit subject to chapter 14, it would have done so.  In fact,
the Legislature indicated otherwise by permitting the trial court to dismiss a
suit as frivolous even before process is served.”); Thomas v. Bush, No.
07-99-0302-CV, 2000 WL 21272, at *3 (Tex. App.—Amarillo 2000 January 13, 2000,
no pet.) (per curiam) (not designated for publication) (“Because a trial court
is authorized to dismiss a claim before service of process, i.e., before the
defendant has even filed an answer, we find that the court’s authority to
dismiss a cause of action does not depend upon a defendant specially excepting
to the petition) (not designated for publication).

Chapter 14 allows dismissal under circumstances in
which dismissal would not be permitted in other contexts.  Cf. Fort Bend
County v. Wilson, 825 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1992,
no writ) (“Although Rule 12(b)(6) of the Federal Rules of Civil Procedure
provides for a motion to dismiss for failure to state a claim upon which relief
can be granted, the Texas Rules of Civil Procedure do not contain any analogous
provision.  . . .  Under the Texas Rules of Civil Procedure, a special
exception is the appropriate vehicle for urging that the plaintiff has failed
to plead a cause of action, and the pleader must be given, as a matter of
right, an opportunity to amend the pleading.”) (citing Centennial Ins. v.
Commercial Union Ins., 803 S.W.2d 479, 482 (Tex. App.—Houston [14th Dist.]
1991, no writ), and Moseley v. Hernandez, 797 S.W.2d 240, 242 (Tex. App.—Corpus
Christi 1990, no writ)).  Because a defendant need not be served and need not
file special exceptions before dismissal under Chapter 14 is appropriate, the
absence of special exceptions cannot properly be relied upon to explain an
expansive interpretation of the allegations made in an inmate’s in forma
pauperis action.  We should not mix apples and oranges.

Burnett did not plead causes of action for conversion
or money had and received when he sued Sharp for “legal malpractice” based on
an allegation that Sharp “breached [his] . . . fiduciary duty owed to
plaintiff, by deception and negligence.”  The absence of special exceptions does
not transform Burnett’s narrow allegation into a claim for conversion or money
had and received.  Therefore, this court errs when it concludes that the trial
court erred under Chapter 14 by dismissing causes of action for conversion and
money had and received that Burnett did not plead.

B.     Breach
of Fiduciary Duty

A legally viable claim for breach of fiduciary duty
requires the existence of a fiduciary relationship between Burnett and Sharp.  See,
e.g., Trousdale v. Henry, 261 S.W.3d 221, 239 (Tex. App.—Houston
[14th Dist.] 2008, pet. denied).  Such a relationship existed while Sharp
represented Burnett.  See Duerr, 262 S.W.3d at 69.  The attorney-client
relationship ended upon Burnett’s termination of Sharp’s representation.  See
Stephenson v. LeBoeuf, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.]
2000, pet. denied).  Under these circumstances, Burnett cannot rely upon a
claim for breach of fiduciary duty to address a post-representation dispute with
his former attorney that is based wholly on conduct alleged to have occurred
after the representation ended.

The circumstances here parallel Stephenson, 16
S.W.3d at 836, in which this court rejected a breach of fiduciary duty claim in
connection with a dispute over certain escrowed sums that arose in 1992 between
attorney Stephenson and his former client LeBoeuf.  “Stephenson argues his
representation of LeBoeuf in her divorce could not give rise to a fiduciary
duty with respect to the escrow account because that representation terminated
upon her divorce in 1983.”  Id.  “We agree.”  Id.  “The
attorney-client relationship is based [on] a contractual relationship in which
the attorney agrees to render professional services for the client.”  Id. 
“In the absence of an agreement to the contrary, an attorney-client
relationship generally terminates upon the completion of the purpose of the
employment.”  Id.  This court concluded that the terminated
representation provided no basis for a breach of fiduciary duty claim by
LeBoeuf predicated entirely on Stephenson’s conduct after the representation
had ended.  Id.

Just as there was no attorney-client relationship in
existence when Stephenson committed the conduct of which LeBoeuf complained, here
too there was no attorney-client relationship in existence when Sharp is
alleged to have committed the conduct of which Burnett complains.  Therefore, Burnett’s
allegation does not present a legally viable claim for breach of fiduciary
duty.  See id.

Section II.C.1. of the plurality opinion relies on Avila
v. Havana Painting Co., 761 S.W.2d 398, 399-400 (Tex. App.—Houston [14th
Dist.] 1988, writ denied), for the proposition that “[a] lawyer who refuses to
pay or deliver funds belonging to his former client upon termination of the
representation has breached a fiduciary duty owed to the former client.”  See
ante, at 8.  This reliance on Avila is misplaced.

The client hired attorney Avila to collect past-due
accounts and paid him a fee to do so.  Avila, 761 S.W.2d at 399.  During
the representation, Avila collected $8,755 belonging to the client but refused to
tender that sum to the client and demanded payment of an additional fee.  Id. 
The client then sued Avila, alleging that he “breached his fiduciary duty to
his client, Havana, and . . . converted funds which belonged to Havana.”  Id.
at 399-400.  The trial court rendered judgment in the client’s favor following
a bench trial, and Avila appealed.  Id.

This court affirmed.  Id. at 400. “At trial,
Havana presented evidence that Avila received funds from Woodland Oaks
Apartments which Havana was entitled to receive and that Avila refused to
deliver those funds to Havana until Havana sued Avila and requested an
injunction to compel Avila to release the funds.”  Id.  “Havana also
presented evidence that it was necessary to hire an attorney to bring suit
against Avila to collect the money to which Havana was entitled.”  Id.  This
court held that sufficient evidence established Avila’s breach of his fiduciary
duty to the client.  Id.  

Avila addresses an attorney’s conduct during
the representation that breached a fiduciary obligation owed during
the representation in connection with a fee dispute that arose during
the representation and then continued after the representation ended.  Id. 
Contrary to the  plurality opinion’s conclusion, Avila does not
establish that a breach of fiduciary duty claim is available to address a post-representation
dispute between an attorney and a former client that is based wholly on attorney
conduct occurring after the representation has ended.  Therefore,
Avila does not control the resolution of Burnett’s appeal.  Stephenson
does.

The plurality opinion cannot bolster its position by
asserting that Sharp had a “duty” to refund to Burnett any unearned part of the
retainer upon termination of his representation of Burnett.  See ante, at
9-10 (citing Tex. Disciplinary R. Prof’l Conduct
1.15(d), reprinted in Tex. Gov’t. Code Ann., tit. 2, subtit. G, app.
A (Vernon 2005) (Tex. State Bar R. art. X, § 9)).  No additional clarity is
provided by discussion of a free-floating “duty” that exists only in the
abstract, untethered to a specific cause of action.  In any event, this assertion
does not resolve the fiduciary duty question because “[t]hese rules do not
undertake to define standards of civil liability of lawyers for professional
conduct.”  Tex. Disciplinary R. Prof’l Conduct Preamble:
Scope ¶ 15, reprinted in Tex. Gov’t. Code Ann., tit. 2, subtit.
G, app. A (Tex. State Bar R. art. X, § 9).  “Violation of a rule does not give
rise to a cause of action nor does it create any presumption that a legal duty
to a client has been breached.”  Id.  “Accordingly, nothing in the rules
should be deemed to augment any substantive legal duty of lawyers or the
extra-disciplinary consequences of violating such a duty.”  Id.

The plurality opinion’s approach would effect a significant
change in this court’s case law.  Left unaddressed are the potential consequences
of expanding far-reaching fiduciary obligations to encompass disputes between
an attorney and a former client that are predicated entirely on attorney
conduct occurring after the representation has ended.  Because Avila focuses
on a different situation, that decision also does not address the existence,
duration, scope and consequences of a fiduciary duty that applies to a dispute
based wholly on an attorney’s post-representation conduct.

We should follow Stephenson and affirm
dismissal of Burnett’s claim for breach of fiduciary duty.

C.    Negligence

A “legal malpractice” claim predicated on
professional negligence focuses on whether an attorney represented a client with
the requisite level of skill.  Duerr, 262 S.W.3d at 70.  “If the gist of
a client’s complaint is that the attorney did not exercise that degree of care,
skill, or diligence as attorneys of ordinary skill and knowledge commonly
possess, then that complaint should be pursued as a negligence claim, rather
than some other claim.”  Deutsch, 97 S.W.3d at 189.

Burnett’s allegations do not support a legally viable
claim against Sharp predicated on professional negligence.  Burnett contends
that Sharp failed to respond after Burnett replaced him with another attorney
and then requested a partial refund of Sharp’s fee.  Burnett does not challenge
the quality of Sharp’s professional activity while he represented Burnett, and
he does not contend that Sharp failed to exercise the degree of care, skill, or
diligence commonly possessed by attorneys of ordinary skill.  Therefore,
Burnett’s “legal malpractice” claim is based on an indisputably meritless legal
theory insofar as he asserts a claim for professional negligence arising from a
post-termination dispute over a partial refund of the portion of Sharp’s fee
that, according to Burnett, Sharp did not earn before being terminated.  Cf.
Duerr, 262 S.W.3d at 70 (professional negligence claims were predicated on
allegations that attorneys mishandled filing of client’s requests for
additional benefits pursuant to class settlement).  

D.    “Deception”

It is not clear whether Burnett’s pleaded claim for
“deception” refers to a statutory claim under the Texas Deceptive Trade
Practices Act (“DTPA”) or to common law fraud.  Burnett fails to assert a
legally viable claim for “deception” under either theory.

Burnett cannot assert a legally viable statutory
cause of action for “deception” against Sharp under the circumstances alleged
because the DTPA does not apply to “a claim for damages based on the rendering
of a professional service, the essence of which is the providing of advice,
judgment, opinion, or similar professional skill.”  Tex. Bus. & Com. Code
Ann. § 17.49(c) (Vernon Supp. 2009).  Burnett has not identified circumstances
that would invoke an exception to this exemption.[1]  Cf. Latham v.
Castillo, 972 S.W.2d 66, 69 (Tex. 1998) (attorney engaged in
“unconscionable action” under sections 17.50(a)(3) and 17.45(5) by making
affirmative misrepresentation to client that he had filed lawsuit and was
actively prosecuting it.).

Similarly, Burnett cannot assert a legally viable
common law fraud claim absent circumstances in which Sharp made affirmative
misrepresentations or failed to disclose information when there was a duty to
disclose it.  See, e.g., Johnson v. Brewer & Prichard, P.C., 73
S.W.3d 193, 211 n.45 (Tex. 2002) (fraud based on affirmative
misrepresentation); Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001)
(“As a general rule, a failure to disclose information does not constitute
fraud unless there is a duty to disclose the information.”).  No such
circumstances are described here.

III.      Determining
Whether Dismissal Should be With Prejudice

Burnett contends that the trial court erred in
dismissing his claims “with prejudice.” Dismissal
with prejudice constitutes an adjudication on the merits and operates as if the
case had been fully tried and decided.  Hickman, 35 S.W.3d at 124.  Orders
dismissing cases with prejudice have full res judicata and collateral
estoppel effect, barring subsequent litigation of the same causes of action or
issues between the same parties.  Id.  Dismissal with prejudice is
proper under Chapter 14 when an inmate’s failure to comply with statutory
filing requirements cannot be remedied; otherwise, dismissal should be without
prejudice.  See id.  

Although Burnett’s
allegations do not comport with his stated causes of action, I cannot say that Burnett’s
failure to comply with Chapter 14’s requirements is beyond remedy given the
gist of his factual allegations.  Therefore, the proper disposition in this
case is dismissal without prejudice.  See Hickman, 35 S.W.3d at 124.

Conclusion

The trial court’s April 14, 2009 order dismissing Burnett’s
suit with prejudice should be modified to state that Burnett’s suit is
dismissed without prejudice.  As modified, the April 14, 2009 dismissal order should
be affirmed.  Therefore, I concur in the court’s judgment in part and dissent
in part.

 

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

 

Panel
consists of Justices Frost, Boyce, and Sullivan.  (Frost, J., majority)
(Sullivan, J., concurring without opinion).









[1] Section 17.49(c)’s
exemption does not apply to an express misrepresentation of a material fact
that cannot be characterized as advice, judgment, or opinion; a failure to
disclose information in violation of section 17.46(b)(24); an unconscionable
action or course of action that cannot be characterized as advice, judgment, or
opinion; breach of an express warranty that cannot be characterized as advice,
judgment, or opinion; or a violation of section 17.46(b)(26), which prohibits
sales of annuity contracts in certain circumstances.  See Tex. Bus.
& Com. Code Ann. § 17.49(c)(1)-(5).